HEIDI M. LOBSTEIN
MARGUERITE DESELMS
269 WESTGATE
PRESCOTT, AZ 86305
phone: 310-427-1008
EMAIL: EMAIL: LOBSTEIN8@GMAIL.COM
Plaintiffs In Pro Per

**UNITED STATES DISTRICT COURT**
**FOR THE**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

|  |  |
|---|---|
| HEIDI M. LOBSTEIN , an individual, MARGUERITE DESELMS, an individual<br><br>PLAINTIFF,<br><br>vs.<br><br>WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES WMALT SERIES 2007-0C1, POLICEMEN'S ANNUITY AND BENEFIT FUND OF THE CITY OF CHICAGO; LABORERS' PENSION FUND AND HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY; IOWA PUBLIC EMPLOYEES' RETIREMENT SYSTEM; ARKANSAS PUBLIC EMPLOYEES' RETIREMENT SYSTEM; VERMONT PENSION INVESTMENT COMMITTEE; WASHINGTON STATE INVESTMENT BOARD; ARKANSAS TEACHER RETIREMENT SYSTEM; PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI; CITY OF TALLAHASSEE RETIREMENT | **Case No.:2:19-CV-07615-SVW-JPRx**<br><br>**Hon. District Judge: Hon. Steven V. Wilson**<br><br>**Courtroom 10A**<br><br>**PLAINTIFF'S THIRD AMENDED COMPLAINT FOR (1) WRONGFUL FORECLOSURE; (2) FAIR DEBT COLLECTION PRACTICES ACT; 15 U.S.C. §77AAA, ET SEQ.**<br><br>Jury Trial Demanded |

1 | SYSTEM; AND CENTRAL STATES,
SOUTHEAST AND SOUTHWEST AREAS

2 | PENSION FUND; Alan David Tikal as Trustee
of the KATN Revocable Living Trust and Does 1

3 | through 10, inclusive.

4 |       DEFENDANTS.

5 | _____ )

6

7 |     TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF

8 | RECORD HEREIN:

9 |     Plaintiff hereby alleges as follows:

10 | **PARTIES**

11 | 1.    Plaintiffs, HEIDI M. LOBSTEIN and MARGUERITE DESELMS reside at 269

12 | Westgate, Prescott, AZ, 86305, and at all relevant times, the address of the subject

13 | property, 3852 MCLAUGHLIN AVENUE, LOS ANGELES, CA 90066. The subject

14 | property is located within this same county.  The legal description for this Property is:

15 |     a.    THE LAND REFERRED TO HEREIN IS SITUATED IN THE STATE OF

16 | CALIFORNIA, COUNTY OF LOS ANGELES, DESCRIBED AS

17 | FOLLOWS:

18

19 |     b.    LOT 297, OF TRACT NO. 7668, IN THE CITY OF LOS ANGELES,

20 | COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP

21 | RECORDED IN BOOK 83 PAGE(S) 1 TO 3 INCLUSIVE OF MAPS, IN THE

22 | OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

23 |     c.    A.P.N.: 4214-013-008.  See Exhibits 1-2.

24

25 | 2.    Defendant WASHINGTON MUTUAL MORTGAGE PASS-THROUGH

26 | CERTIFICATES WMALT SERIES 2007-0C1, is NOT registered with the California

27 | Secretary of State to do business in California and is NOT A REGISTERED TRUST,

28

is not licensed to do business in this state and is doing business here unlawfully, and whose principal place of business is 1301 SECOND AVENUE, WMC 3501A SEATTLE WA 98101 (206) 500-4418 and is subject to the laws of Washington; AND whose closing date is January 25th, 2007[1], making any acquisition after that illegal, unenforceable and outside the terms of the offering. [2]

3.    Defendant    WASHINGTON    MUTUAL    MORTGAGE    PASS-THROUGH CERTIFICATES WMALT SERIES 2007-0C1, and which entity is currently operating outside of the statutory guidelines and thus NOT a valid California Corporation, and cannot do business in this State and knowingly doing so in violation of California Corporations Code Section 2100, et. seq.

4.    Defendant    WASHINGTON    MUTUAL    MORTGAGE    PASS-THROUGH CERTIFICATES WMALT SERIES 2007-0C1 is a "closed trust" whose principal place of business is 1301 SECOND AVENUE, WMC 3501A SEATTLE WA 98101 (206) 500-4418, and is subject to the laws of the State of Washington.

5.    Plaintiff is informed and believes and based on such information and belief aver that each of the Defendants is contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions

---

[1] https://www.sec.gov/Archives/edgar/data/1317069/000127727707000043/fwptermsheetwamu07_oa1.pdf
[2] Thus, it has designated, pursuant to 2104. Any foreign lending institution which has not qualified to do business in this state and which engages in any of the activities set forth in subdivision (d) of Section 191 shall be considered by such activities to have appointed the Secretary of State as its agent for service of process for any action arising out of any such activities, and, on or before June 30th of each year, shall file a statement showing the address to which any notice or process may be sent in the manner and with the effect provided in Section 2111. See CORPORATIONS CODE SECTION 2100-2117.1. Therefore, the two unregistered Defendants have elected to have the secretary of state accept service of process for them and a copy of the summons and complaint will be served by certified mail, return receipt requested, to the last known address of the Defendant, 452 FIFTH AVENUE NEW YORK NY 10018 212 525-8119.

described herein.

6.     Plaintiff is informed and believe and based on such information and belief aver that Defendants   WASHINGTON   MUTUAL   MORTGAGE   PASS-THROUGH CERTIFICATES   WMALT   SERIES   2007-0C1,,    and "All Persons Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest In The Property Described In The Complaint Adverse To Plaintiff's Title, Or Any Cloud On Plaintiff's Title Thereto, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as averred herein.

7.     DEFENDANT Policemen's Annuity and Benefit Fund of the City of Chicago is a lender under the subject mortgage and has materially benefitted and been unjustly enriched from the Plaintiff by already collecting payment in full for the mortgage from the private mortgage insurance policy (non-subrogable) and failing to disclose the receipt of those funds to the Plaintiff; and the collection of an 89 million dollar settlement and not crediting that recovery to the Plaintiff's mortgage in a Class Action Complaint filed in the United States District Court, Southern District of New York, 12 CV 2865, *Policemen's Annuity and Benefit Fund of the City of Chicago; Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity; Iowa Public Employees' Retirement System; Arkansas Public Employees' Retirement System; Vermont Pension Investment Committee; Washington State Investment Board; Arkansas Teacher Retirement System; Public Employees' Retirement System of Mississippi; City of Tallahassee Retirement System; and Central States, Southeast and Southwest Areas Pension Fund v. BANK OF AMERICA, NA AS TRUSTEE UNDER VARIOUS*

POOLING AND SERVICING AGREEMENTS, AND U.S. BANK NATIONAL ASSOCIATION (AS TRUSTEE UNDER VARIOUS POOLING AND SERVICING AGREEMENTS).

8. That DEFENDANT *Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity* is a lender under the subject mortgage and has materially benefitted and been unjustly enriched from the Plaintiff by already collecting payment in full for the mortgage from the private mortgage insurance policy (non-subrogable) and failing to disclose the receipt of those funds to the Plaintiff; and the collection of an 89 million dollar settlement and not crediting that recovery to the Plaintiff's mortgage in a Class Action Complaint filed in the United States District Court, Southern District of New York, 12 CV 2865, *Policemen's Annuity and Benefit Fund of the City of Chicago; Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity; Iowa Public Employees' Retirement System; Arkansas Public Employees' Retirement System; Vermont Pension Investment Committee; Washington State Investment Board; Arkansas Teacher Retirement System; Public Employees' Retirement System of Mississippi; City of Tallahassee Retirement System; and Central States, Southeast and Southwest Areas Pension Fund v. BANK OF AMERICA, NA AS TRUSTEE UNDER VARIOUS POOLING AND SERVICING AGREEMENTS, AND U.S. BANK NATIONAL ASSOCIATION (AS TRUSTEE UNDER VARIOUS POOLING AND SERVICING AGREEMENTS).*

9. That Defendant Iowa Public Employees' Retirement System is a lender under the subject mortgage and has materially benefitted and been unjustly enriched from the

Plaintiff by already collecting payment in full for the mortgage from the private mortgage insurance policy (non-subrogable) and failing to disclose the receipt of those funds to the Plaintiff; and the collection of an 89 million dollar settlement and not crediting that recovery to the Plaintiff's mortgage in a Class Action Complaint filed in the United States District Court, Southern District of New York, 12 CV 2865, *Policemen's Annuity and Benefit Fund of the City of Chicago; Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity; Iowa Public Employees' Retirement System; Arkansas Public Employees' Retirement System; Vermont Pension Investment Committee; Washington State Investment Board; Arkansas Teacher Retirement System; Public Employees' Retirement System of Mississippi; City of Tallahassee Retirement System; and Central States, Southeast and Southwest Areas Pension Fund v. BANK OF AMERICA, NA AS TRUSTEE UNDER VARIOUS POOLING AND SERVICING AGREEMENTS, AND U.S. BANK NATIONAL ASSOCIATION (AS TRUSTEE UNDER VARIOUS POOLING AND SERVICING AGREEMENTS*)

10.     That Defendant Arkansas Public Employees' Retirement System That DEFENDANT *Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity* is a lender under the subject mortgage and has materially benefitted and been unjustly enriched from the Plaintiff by already collecting payment in full for the mortgage from the private mortgage insurance policy (non-subrogable) and failing to disclose the receipt of those funds to the Plaintiff; and the collection of an 89 million dollar settlement and not crediting that recovery to the Plaintiff's mortgage in a Class Action Complaint filed in the United States District Court, Southern District of New York, 12 CV 2865,

*Policemen's Annuity and Benefit Fund of the City of Chicago; Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity; Iowa Public Employees' Retirement System; Arkansas Public Employees' Retirement System; Vermont Pension Investment Committee; Washington State Investment Board; Arkansas Teacher Retirement System; Public Employees' Retirement System of Mississippi; City of Tallahassee Retirement System; and Central States, Southeast and Southwest Areas Pension Fund v. BANK OF AMERICA, NA AS TRUSTEE UNDER VARIOUS POOLING AND SERVICING AGREEMENTS, AND U.S. BANK NATIONAL ASSOCIATION (AS TRUSTEE UNDER VARIOUS POOLING AND SERVICING AGREEMENTS)*

11.   That Defendant Vermont Pension Investment Committee is an entity of unknown origin and the lender under the subject mortgage and has materially benefitted and been unjustly enriched from the Plaintiff by already collecting payment in full for the mortgage from the private mortgage insurance policy (non-subrogable) and failing to disclose the receipt of those funds to the Plaintiff; and the collection of an 89 million dollar settlement and not crediting that recovery to the Plaintiff's mortgage in a Class Action Complaint filed in the United States District Court, Southern District of New York, 12 CV 2865, *Policemen's Annuity and Benefit Fund of the City of Chicago; Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity; Iowa Public Employees' Retirement System; Arkansas Public Employees' Retirement System; Vermont Pension Investment Committee; Washington State Investment Board; Arkansas Teacher Retirement System; Public Employees' Retirement System of Mississippi; City of Tallahassee Retirement System; and Central States, Southeast and Southwest Areas*

*Pension Fund v. BANK OF AMERICA, NA AS TRUSTEE UNDER VARIOUS POOLING AND SERVICING AGREEMENTS, AND U.S. BANK NATIONAL ASSOCIATION (AS TRUSTEE UNDER VARIOUS POOLING AND SERVICING AGREEMENTS)*;

12.    That DEFENDANT *Washington State Investment Board* is a lender of unknown origin and the Lender under the subject mortgage and has materially benefitted and been unjustly enriched from the Plaintiff by already collecting payment in full for the mortgage from the private mortgage insurance policy (non-subrogable) and failing to disclose the receipt of those funds to the Plaintiff; and the collection of an 89 million dollar settlement and not crediting that recovery to the Plaintiff's mortgage in a Class Action Complaint filed in the United States District Court, Southern District of New York, 12 CV 2865, *Policemen's Annuity and Benefit Fund of the City of Chicago; Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity; Iowa Public Employees' Retirement System; Arkansas Public Employees' Retirement System; Vermont Pension Investment Committee; Washington State Investment Board; Arkansas Teacher Retirement System; Public Employees' Retirement System of Mississippi; City of Tallahassee Retirement System; and Central States, Southeast and Southwest Areas Pension Fund v. BANK OF AMERICA, NA AS TRUSTEE UNDER VARIOUS POOLING AND SERVICING AGREEMENTS, AND U.S. BANK NATIONAL ASSOCIATION (AS TRUSTEE UNDER VARIOUS POOLING AND SERVICING AGREEMENTS)*

13.    That the Defendant Arkansas Teacher Retirement System is a lender of unknown origin and the Lender under the subject mortgage and has materially benefitted and

been unjustly enriched from the Plaintiff by already collecting payment in full for the mortgage from the private mortgage insurance policy (non-subrogable) and failing to disclose the receipt of those funds to the Plaintiff; and the collection of an 89 million dollar settlement and not crediting that recovery to the Plaintiff's mortgage in a Class Action Complaint filed in the United States District Court, Southern District of New York, 12 CV 2865, *Policemen's Annuity and Benefit Fund of the City of Chicago; Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity; Iowa Public Employees' Retirement System; Arkansas Public Employees' Retirement System; Vermont Pension Investment Committee; Washington State Investment Board; Arkansas Teacher Retirement System; Public Employees' Retirement System of Mississippi; City of Tallahassee Retirement System; and Central States, Southeast and Southwest Areas Pension Fund v. BANK OF AMERICA, NA AS TRUSTEE UNDER VARIOUS POOLING AND SERVICING AGREEMENTS, AND U.S. BANK NATIONAL ASSOCIATION (AS TRUSTEE UNDER VARIOUS POOLING AND SERVICING AGREEMENTS)*

14. That the Defendant Public Employees' Retirement System of Mississippi is a lender of unknown origin and the Lender under the subject mortgage and has materially benefitted and been unjustly enriched from the Plaintiff by already collecting payment in full for the mortgage from the private mortgage insurance policy (non-subrogable) and failing to disclose the receipt of those funds to the Plaintiff; and the collection of an 89 million dollar settlement and not crediting that recovery to the Plaintiff's mortgage in a Class Action Complaint filed in the United States District Court, Southern District of New York, 12 CV 2865, *Policemen's Annuity and Benefit Fund*

*of the City of Chicago; Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity; Iowa Public Employees' Retirement System; Arkansas Public Employees' Retirement System; Vermont Pension Investment Committee; Washington State Investment Board; Arkansas Teacher Retirement System; Public Employees' Retirement System of Mississippi; City of Tallahassee Retirement System; and Central States, Southeast and Southwest Areas Pension Fund v. BANK OF AMERICA, NA AS TRUSTEE UNDER VARIOUS POOLING AND SERVICING AGREEMENTS, AND U.S. BANK NATIONAL ASSOCIATION (AS TRUSTEE UNDER VARIOUS POOLING AND SERVICING AGREEMENTS).*

15. That the Defendant City of Tallahassee Retirement System is a lender of unknown origin and the Lender under the subject mortgage and has materially benefitted and been unjustly enriched from the Plaintiff by already collecting payment in full for the mortgage from the private mortgage insurance policy (non-subrogable) and failing to disclose the receipt of those funds to the Plaintiff; and the collection of an 89 million dollar settlement and not crediting that recovery to the Plaintiff's mortgage in a Class Action Complaint filed in the United States District Court, Southern District of New York, 12 CV 2865, *Policemen's Annuity and Benefit Fund of the City of Chicago; Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity; Iowa Public Employees' Retirement System; Arkansas Public Employees' Retirement System; Vermont Pension Investment Committee; Washington State Investment Board; Arkansas Teacher Retirement System; Public Employees' Retirement System of Mississippi; City of Tallahassee Retirement System; and Central States, Southeast and Southwest Areas*

*Pension Fund v. BANK OF AMERICA, NA AS TRUSTEE UNDER VARIOUS POOLING AND SERVICING AGREEMENTS, AND U.S. BANK NATIONAL ASSOCIATION (AS TRUSTEE UNDER VARIOUS POOLING AND SERVICING AGREEMENTS)*

16.   That the Defendant Central States, Southeast and Southwest Areas Pension Fund is a lender of unknown origin and the Lender under the subject mortgage and has materially benefitted and been unjustly enriched from the Plaintiff by already collecting payment in full for the mortgage from the private mortgage insurance policy (non-subrogable) and failing to disclose the receipt of those funds to the Plaintiff; and the collection of an 89 million dollar settlement and not crediting that recovery to the Plaintiff's mortgage in a Class Action Complaint filed in the United States District Court, Southern District of New York, 12 CV 2865, *Policemen's Annuity and Benefit Fund of the City of Chicago; Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity; Iowa Public Employees' Retirement System; Arkansas Public Employees' Retirement System; Vermont Pension Investment Committee; Washington State Investment Board; Arkansas Teacher Retirement System; Public Employees' Retirement System of Mississippi; City of Tallahassee Retirement System; and Central States, Southeast and Southwest Areas Pension Fund v. BANK OF AMERICA, NA AS TRUSTEE UNDER VARIOUS POOLING AND SERVICING AGREEMENTS, AND U.S. BANK NATIONAL ASSOCIATION (AS TRUSTEE UNDER VARIOUS POOLING AND SERVICING AGREEMENTS)*.

17.   That after collecting the payment in full from the private mortgage insurance and the class action, the Defendant now seeks to continue to collect a third time by taking the

equity and Plaintiff's property through a wrongful foreclosure.

18.    That the Defendant, claiming to be the Trustee should be barred from so acting as the class action against the Trustee for the subject Trust was sued by the Plaintiff's lender for misconduct which constitutes an abuse of its powers, neglect, breach of fiduciary duty, and as a result, the court should disqualify the current trustee and appoint a court ordered trustee in its place and stead.

19.    That said Trust, after the lawsuit was settled and closed and Plaintiff is currently being foreclosed upon by a false trust which does not exist and has no authority to act in this State.

20.    That foreclosure is an equitable remedy and regardless of the source of the revenue, once a mortgage has been paid, the lender must credit the payment received toward the mortgage before attempting to collect from the Plaintiff, and here, the only investment by the lenders were the investment in the subject mortgage and other mortgages, and any recovery under the class action lawsuits was to compensate them for the loss of value in their investment, and therefore the recovery of any money MUST AS A MATTER OF EQUITY AND LAW, apply to credit toward the subject mortgage, especially since there was payment in full by the non-subrogable private mortgage insurance and acceptance of a settlement under the class action for the loss of their investment and agreement to not sue further.

21.    Each of the Defendants named herein are believed to, and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

**GENERAL ALLEGATIONS**

## FACTS COMMON TO ALL CAUSES OF ACTION

22. Plaintiff incorporates herein paragraphs 1 through 21, inclusive.

23. On 9/9/2004, Plaintiff purchased certain real property commonly known as (the "Subject Property"), located at 3852 MCLAUGHLIN AVENUE, LOS ANGELES, CA 90066, Document Number 04-2315301, recorded in the official records of Los Angeles County, California, Exhibit 1-2. The subject property is located within this same county.

24. The address of the subject property, 3852 MCLAUGHLIN AVENUE, LOS ANGELES, CA 90066. The subject property is located within this same county. The legal description for this Property is:

THE LAND REFERRED TO HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES, DESCRIBED AS FOLLOWS:

LOT 297, OF TRACT NO. 7668, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 83 PAGE(S) 1 TO 3 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

A.P.N.: 4214-013-008.  See Exhibits 1-2.

On or about April of 2012, a class action was filed by the Lender against the Trustee of the Trust for various wrongdoings, including, but not limited to, "As the Trustee for the Covered Trusts, Defendants owed the MBS holders certain contractual duties, as well as duties imposed by the federal Trust Indenture Act of 1939, as amended, (the "TIA"), 15 U.S.C. §77aaa, et seq., with respect to the Mortgage Loans held by the Covered Trusts. These duties were spelled out in the Covered Trusts' Governing Agreements, which are substantially similar. A copy of one of those Governing Agreements, the Pooling and Servicing

Agreement ("PSA") for Washington Mutual Mortgage Pass-Through Certificates WMALT
Series 2006-5 Trust .

25. . The PSA is incorporated by reference into this Complaint as if set forth fully herein.

3. The purpose of having a Trustee in MBS securitizations such as these is to ensure that there is at least one independent party to the Governing Agreements who, unlike the MBS holders, did not face collective action, informational, or other limitations, and as a result could effectively protect the trusts and their beneficiaries, the MBS holders. Thus, the Governing Agreements, as modified by the TIA, imposed critical duties on Defendants as Trustees that directly impacted the value of the MBS. 4.  In order for the WaMu MBS to in fact be backed by Mortgage Loans – i.e., to have any value – the Covered Trusts had to take title to the underlying Mortgage Loans for which they provided due consideration, and which were, in theory, conveyed to them. The Governing Agreements establish the terms of the conveyance of the Mortgage Loans to the Trustee on behalf of the Covered Trusts and the MBS holders, and those terms are intended to ensure that the Trustee in fact takes title to the Mortgage Loans. Among other things, the Governing Agreements require that the Trustee, or its agent, take physical possession of the Mortgage Files, and that the Mortgage Note and the Mortgage are properly endorsed and assigned to the Trustee. To ensure that the Mortgage Loans were properly conveyed to the Covered Trusts, the Governing Agreements also required the Trustee or its agent to review the loan files for each of the Mortgage Loans and to certify that the documentation for each of the loans was accurate and complete. 5.  Just as fundamental in an MBS securitization as the Covered Trusts properly taking title to the Mortgage Loans is the quality of the Mortgage Loans to which the Covered Trusts purportedly receive title. For that reason, the Governing

Agreements contain representations and warranties attesting to the quality of the Mortgage Loans conveyed to the Covered Trusts. Ratings agencies assess the quality of the MBS based on those representations and warranties, and notably, the ratings agencies must be informed in the event of their breach. The Governing Agreements therefore require the securitization's Sponsor (or Seller), in this case, affiliates of WaMu, to cure, substitute, or repurchase any Mortgage Loans that materially breach those representations and warranties, or that do not have complete Mortgage Files, including on account of inadequate assignments or endorsements. Significantly, the Governing Agreements also require the Trustee, among others, to enforce the Seller's obligation to cure, substitute, or repurchase such Mortgage Loans. 6. As described more fully below, however, Defendants regularly disregarded their contractual and statutory duties to ensure that there were no missing, defective or incomplete documents, and that defective loans were removed from the mortgage pools supporting the WaMu MBS. 7. Defendants are familiar with the damage that arises when Mortgage Loans are not adequately transferred to securitization Trusts. For example, in Frost v. LaSalle Bank, N.A., No. 4D09-2668, 2010 WL 2862149 (Fla. App., 4th Dist. May 24, 2010), the court reversed an order entering summary judgment in LaSalle's favor in a foreclosure action on the grounds that there was no proof LaSalle held the mortgage note with a valid endorsement on the date it brought the foreclosure action. In this regard, the Court observed that the copies of the Note and Mortgage attached to the complaint identified WaMu as the original lender and that "the Note was bare with respect to the presence of an endorsement." Nor did the complaint "have attached to it an assignment of the Mortgage or Note." Id. at *1. Indeed, LaSalle contradicted its own assertion of ownership by including an affidavit in support of its

motion for summary judgment stating that Bank of America, as successor by merger to LaSalle as Trustee was the owner of the Note, not LaSalle. Further, the Court found that the fact that the Note attached to the complaint contained no endorsement but the Note attached to the motion for summary judgment contained a bearer endorsement created "a reasonable inference that the signature and endorsement were placed on the original Note" at a time when WaMu had no rights in the Note, "thereby making the endorsement unauthorized and the signature a forgery." Id. at *10-*11.8. In addition, various government investigations, along with a lawsuit brought by a trustee of other WaMu MBS Trusts, have shown that WaMu and/or its affiliates routinely breached the representations and warranties it made regarding the Mortgage Loans it securitized. When Defendants learned of these violations, they had the duty to notify MBS holders of them. Moreover, once there were events of default and/or the rights of MBS holders to full and timely payment of their principal and interest were impaired, Defendants had the duty to act as a prudent person to exercise all of their powers under the Governing Agreements to protect MBS holders. Defendants have had considerable knowledge of the defects in the Mortgage Loans, the breaches of the Seller's representations and warranties, and the harm that this has caused MBS holders. As discussed herein, Defendants knew:

• from at least their review of the Mortgage Loan Files, and from their attempts to foreclose on Mortgage Loans, that the Mortgage Loans had not been properly transferred to the Covered Trusts;

• from at least its review of the Mortgage Loan Files, and from its attempts to foreclose on Mortgage Loans, that the Mortgage Loan Files were incomplete;

• from at least the high rate of delinquent and defaulted Mortgage Loans in the

Covered Trusts, from the many investigations and suits detailing the high number of defective loans in WaMu securitizations, and from newspaper articles reporting similar facts, that many of the Mortgage Loans in the Covered Trusts did not comply with the Seller's representations and warranties concerning their underwriting quality; and

• from at least the Covered Trusts' poor performance, and from their attempts to foreclose on Mortgage Loans, that MBS holders were being harmed by the defects in the Covered Trusts' Mortgage Loans. Despite all of that, Defendants failed to take any action to protect the MBS holders, as it was required to do. The Mortgage Loans in the Covered Trusts have experienced high levels of payment delinquencies, delays in foreclosure actions and credit losses which would not have occurred but for the negligence of Defendants and their failure to perform their responsibilities under the Governing Agreements and TIA. By failing to perform their duties, Defendants have caused MBS holders to suffer millions of dollars in losses.

## JURISDICTION AND VENUE

26. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 for violations of the TIA and supplemental jurisdiction over the contract claims.

27. Plaintiff is entitled to protection under 28 USC §1331 of federal Trust Indenture Act of 1939, as amended, (the "TIA"), 15 U.S.C. §77aaa, et seq. as a member of the class that is the subject of the statute which it is designed to protect and the Plaintiff's home and equity is the part of the corpus of the trust which is the investment upon which the Lender is basing their action and the Plaintiff is the direct, actual victim of the misconduct alleged by the Defendants against the Trust.

28. Plaintiff is also the third-party beneficiary, with respect to the Mortgage Loans held by the Covered Trusts of the Duties owed by the Trust under the Governing Agreements, as those agreements were designed to protect the Plaintiff from the harm wrought upon them by the Defendants, and each of them, who acted in concert for the purpose of causing the Plaintiff to suffer, and she did suffer, financial and emotional harm and loss of money where the Defendants have already been unjustly enriched at least twice and a third time from the wrongful foreclosure of the Plaintiff's home.

29. These duties were spelled out in the Covered Trusts' Governing Agreements, which are substantially similar. A copy of one of those Governing Agreements, the Pooling and Servicing Agreement ("PSA") for Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2006-5 Trust, is attached as Exhibit C (and on file in that class action case and referred to and therefore incorporated herein as though set forth in full). The PSA is incorporated by reference into this Complaint as if set forth fully herein (and on file in that class action case and referred to and therefore incorporated herein as though set forth in full).

30. It also has jurisdiction pursuant to 28 U.S.C. §1332(a).

31. Venue is proper in this District under 28 U.S.C. §1391(b).

32. EXHIBIT 3 – DEED OF TRUST, RECORDED IN THE OFFICIAL RECORDS OF THE COUNTY OF LOS ANGELES, DOCUMENT NUMBER 04-2315302 ON SEPTEMBER 9TH, 2004.

33. Said loan is an infamous World Savings Deed of Trust which was part of the Pick a Payment fraud, and the court has already ruled that their mortgages are void as an illegal and illicit scheme and artifice to defraud borrowers.

34. EXHIBIT 4 -  is a Golden West Reconveyance, Document Number 05-3203718.

35. EXHIBIT 5 – DEED OF TRUST AND REQUEST FOR NOTICE OF DEFAULT recorded in the official records of Los Angeles County, Document 05-1583036 on July 6th, 2005.

36. Said deed of trust purports to claim that Sunbelt Financial Services was the lender.

37. A search of the public records shows that Sunbelt Financial Services was not only NOT the lender, but it did not exist at the time as a lawful corporation, was not a registered lender, and was doing business here unlawfully.

38. Because the lender was not licensed to do business in this state, the purported loan and deed of trust is void ab initio as an illegal and unenforceable agreement.

39. EXHIBIT 6 is a Deed of Reconveyance recorded in the official records of Los Angeles County on December 30th, 2005, Record number 05-3238575.

40. EXHIBIT 7 is a deed of trust in favor of Mortgageit recorded in the official records of Los Angeles County on December 7th, 2005, record number 05-2991085.

41. Mortgageit is a foreign corporation New York corporation.

42. On May 3, 2011, a civil fraud lawsuit was filed by the United States against Deutsche Bank AG, DB Structured Products, Inc., Deutsche Bank Securities, Inc. (collectively "Deutsche Bank") and MORTGAGEIT, INC. ("MORTGAGEIT") seeking damages under the federal False Claims Act for repeated false certifications to U.S. Department of Housing and Urban Development ("HUD") in connection with the residential mortgage origination practices of MORTGAGEIT, a wholly-owned subsidiary of Deutsche Bank AG since 2007.

43. The Complaints filed in Manhattan federal court alleged that between 1999 and 2009, MORTGAGEIT was a participant in the Direct Endorsement Lender Program ("DEL

program"), which delegates authority to participating private lenders to endorse mortgages for Federal Housing Administration's ("FHA's") insurance.

44. As a Direct Endorsement Lender, MORTGAGEIT had the authority to originate, underwrite, and endorse mortgages for FHA insurance.

45. If a Direct Endorsement Lender approves a mortgage loan for FHA insurance and the loan later defaults, the holder of the loan may submit an insurance claim to HUD for the associated default costs, which HUD is obligated to pay.

46. Under the DEL program, neither the FHA nor HUD reviews a loan before it is endorsed for FHA insurance.

47. Direct Endorsement Lenders are required to follow program rules designed to ensure that they are properly underwriting and endorsing mortgages for FHA insurance.

48. Inherent in that obligation is to maintain a quality control program that can prevent and correct any underwriting deficiencies.

49. Such a quality control program must include a full review by the lender of all loans that go into default within the first six payments, known as "early payment defaults."

50. *Early payment defaults* may be signs of problems in the underwriting process, and by reviewing early payment defaults, Direct Endorsement Lenders are able to monitor those problems, correct them, and report them to HUD

51. The Complaint alleges that MORTGAGEIT failed to comply with the requirements of a quality control program.

52. Further, since 1999, MORTGAGEIT endorsed over 39,000 mortgages for FHA insurance.

53. During that same period, FHA paid in excess of $369 million in insurance claims on over 3,200 mortgages endorsed for FHA insurance by MORTGAGEIT (including

more than $58 million in defaulted loans that occurred after Deutsche Bank AG's 2007 acquisition of MORTGAGEIT.

54. The Complaint alleged that a portion of those losses was caused by the false statements that the defendants made to HUD to obtain FHA insurance on individual loans.

55. MORTGAGEIT had knowingly falsely certified that each of these loans was eligible for FHA insurance – in large part because MORTGAGEIT failed to perform basic due diligence and repeatedly endorsed mortgage loans that were not eligible for FHA insurance.

56. That the mortgage which is the subject of this action has been paid by the fraud perpetrated by Mortgageit and the FHA insurance has paid the amounts in full, and the FHA insurance which has no subrogation rights, and as an actual and proximate cause, the Defendant has been paid in full and has no standing to seek monetary damages from the Plaintiff.

57. Exhibit 8 is the Mers Substitution of Trustee and Full Reconveyance, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20070236103, on February 5th, 2007.

58. Exhibit 9 is the Mortgage Store Financial, Inc., Deed of Trust, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 06-2842065, on December 21st, 2006.

59. The controller of Mortgage Store was convicted and the store closed in June of 2008 for floating checks and for charges that arose out of the operations of the business.

60. That the mortgage was stemmed from the fraudulent operations of the business.

61. That the mortgage itself is void as a result of being a part of a felonious scheme concocted by Amark Avalos, the controller.

62. Jason Rauschelbach and John York, the owners of The Mortgage Store, pleaded guilty earlier this year to related charges.

63. Rauschelbach is serving a 24-month prison sentence.

64. Exhibit 10 is an Assignment of Deed of Trust created and by California Reconveyance Company to Bank of America, NA as successor by merger to LaSalle Bank, NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2007-0C1 Trust in the 12/01/2006.

65. Said assignment is of a securitized instrument and as a result of it being securitized into a closed trust, the instrument was actually void and makes the mortgage which is the subject of this action void, See *Glaski v. Bank of America*, 218 Cal. App. 4th 1079 - Cal: Court of Appeal, 5th Appellate Dist. 2013: "Under New York Trust Law, every sale, conveyance or other act of the trustee in contravention of the trust is void. EPTL § 7-2.4. Therefore, the acceptance of the note and mortgage by the trustee after the date the trust closed, would be void." (***Wells Fargo Bank, N.A***. *v. Erobobo* (N.Y.Sup.Ct. 2013) 39 Misc.3d 1220(A) [2013 WL 1831799, p. *8]; see *Levitin & Twomey, Mortgage Servicing, supra*, 28 Yale J. on Reg. at p. 14, fn. 35 [under N.Y. law, any transfer to the trust in contravention of the trust documents is void].) Relying on Erobobo, a bankruptcy court recently concluded "that under New York law, assignment of the Saldivars' Note after the start up day is void ab initio. As such, none of the Saldivars' claims will be dismissed for lack of standing." (*In re Saldivar* (Bankr. S.D.Tex., June 5, 2013, No. 11-10689) 2013 WL 2452699, p. *4.)

66. EXHIBIT 11 is a Substitution of Trustee and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20070236103, on February 5th, 2007.

67. Said document purports to have been executed by Deborah Brignac, vice president of Bank of America, National Association as successor by merger to LaSalle Bank NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2007-0C1 Trust by JPMorgan Chase Bank, National Association, as attorney in fact.

68. A search of the public records does not reveal any pre-recorded authority for Deborah Brignac to execute documents on behalf of Bank of America but instead revealed that she was not employed as a vice president of Bank of America, but instead an employee of California Reconveyance Company who was convicted of being part of the Florida foreclosure mill, Albertelli Law, who acquired California Reconeyance Company, a California based trustee firm, from J.P. Morgan Chase Bank NA in December 2013. Albertelli has put Deborah Brignac, a notorious robosigner, in charge of running ALAW's west coast operations.  CRC wrongfully foreclosed on thousands of homes in California and Arizona using robosigned documents.

69. That the mortgage which the substitution is based is VOID as set forth above.

70. That EXHIBIT 12 is a fraudulent notice of default, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20091620620, on October 27th, 2009 recorded by the convicted California Reconveyance Company.

71. That Exhibit 13 is a Notice of Trustee's Sale and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20100136998, on January 29th, 2010 recorded by the convicted California Reconveyance Company.

72. Note that it too was signed by the forger, Deborah Brignac, as Vice President of Now California Reconveyance Company.

73. Attached to said notice is an affidavit from JP MORGAN CHASE BANK, NA, who is not listed on the void mortgage, but claims now to be the servicer for the Defendant.

74. Said notice falsely claims that the time frame did not apply, yet it was applicable, making the affirmation perjury.

75. Said affirmation was not signed, but simply had a typed name, in direct violation of code.

76. Exhibit 14 is a Substitution of Trustee and Full Reconveyance, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20101819203, on December 9th, 2010.

77. Exhibit 15 is a Substitution of Trustee and Full Reconveyance, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20101819203 on December 9th, 2010.

78. Exhibit 15 is a Substitution of Trustee and Full Reconveyance, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20101819203 on December 9th, 2010 recorded by the convicted California Reconveyance Company.

79. EXHIBIT 16 is a Notice of Trustee's Sale, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20110178407 on February 2nd, 2011 recorded by the convicted California Reconveyance Company.

80. EXHIBIT 17 is a Substitution of Trustee and Full Reconveyance, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20120302504 on February 27th, 2012 recorded by the convicted California Reconveyance Company.

81. EXHIBIT 18 is a Corporate Assignment of Deed of Trust, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20120703205 on May 10th, 2012 recorded by the JPMorgan Chase Bank, who claimed originally to be a servicer, and in this document claims to be the successor in interest to the defunct Mortgage Store and purported successor, the Trust, and the void mortgage.

82. Said document admits on its face that JPMorgan Chase is responsible for receiving payments and said document was prepared in Florida, County of Pinellas.

83. In Florida, it constitutes a felony to prepare for recording and recording in the official records a forged and / or false document.

84. Said document is a part of a forgery and thus is void and unenforceable under Florida Law.

85. That Osceola County completed an investigation of their recorded documents and found that JP Morgan Chase had violated multiple felonies when they prepared and recorded similar false documents.

86. That under the laws of the State of Florida, a power of attorney had to be recorded in the official records before any such preparation and signature of a document for recording in the official records, and a search of LaQuina Wilson Doaty evidences that no such authority exists.

87. That because the document is illegal in the state where it was created, it is VOID ab initio.

88. EXHIBIT 19 is a NOTICE OF TRUSTEE'S SALE, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document

20121675620 on November 5th, 2012 recorded by the same convicted California Reconveyance Company.

89. EXHIBIT 20 is a SUBSTITUTION OF TRUSTEE, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20150551613 on May 13th, 2015 recorded by Trustee Corps.

90. Said document is void as EXHIBIT 18 is a Corporate Assignment of Deed of Trust, document 20150551613, recorded in the official records of Los Angeles County on May 13th, 2015 is a felony, perjury and a fraud perpetrated on the people, the Plaintiff and the Court.

91. Exhibit 20 purports to claim that U.S. Bank National Association has substituted the trustee, but as seen in Exhibit 18, JPMorgan Chase claims to be the assignee of the subject mortgage, and therefore there is no authority to substitute trustees by the assignor, US Bank.

92. This is slander on the Plaintiffs title and a conspiracy exists between Defendant WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES WMALT SERIES 2007-0C1 and JP Morgan Chase Bank, NA who both apparently believe that felonies are still acceptable in this state.

93. That said document was created in Florida, where it constitutes a felony to prepare for recording and record in the official records a fraudulent document such as Exhibit 20.

94. EXHIBIT 21 is a Trustee Corps Notice of Trustees sale, and recorded in the official records of Los Angeles County, California 20150609241 on May 26th, 2015.

95. That Exhibit is a fraudulent document as they claim to be selling the property to enforce a void mortgage, which was transferred into a closed trust by an entity that has no standing to do so.

96. EXHIBIT 22 is a Trustee Corps Notice of Trustees sale, and recorded in the official records of Los Angeles County, California 20151072190 on August 31st, 2015.

97. That Exhibit 22 is a fraudulent document as they claim to be selling the property to enforce a void mortgage, which was transferred into a closed trust by an entity that has no standing to do so.

98. EXHIBIT 23 is an admission of fraud and a Notice of Rescission of Notice of Default and Election to Sell Under Deed of Trust, and recorded in the official records of Los Angeles County, California 20161343577 on October 31st, 2016.

99. EXHIBIT 24 is another fraudulent Substitution of Trustee and recorded in the official records of Los Angeles County, California 20181079618 on October 31st, 2016, this time designating National Default Servicing Corporation.

100.    Multiple lawsuits have been brought and been successful against National Default Servicing Corporation, including a Nevada class action to disgorge them of all profits, which is similar to the conduct committed against the Plaintiff herein, but Plaintiff was not a party to that class action since it was for Nevada Residents.

101.    Again, fraudulently, the claimed beneficiary in the fraudulently recorded document, contrary to the claims of JPMorgan Chase Bank, NA (Exhibit 18), is in favor of US Bank.

102.    EXHIBIT 25 is a short form deed of trust and assignments of rents by CAA Inc and recorded in the official records of Los Angeles County, California 20101843661 on December 14th, 2010.

103.    A search of the public records shows that it had a Registration Date 03/11/1991 and was suspended from doing business by the FTB and therefore the deed of trust was

void ab initio as they were barred from doing business in this state pursuant to order by the FTB.

104.    EXHIBIT 26 is a grant deed from Heidi Lobstein to the McGlughlin Revocable Living Trust Dated November 17th, 2010.

105.    EXHIBIT 27 is the Lis Pendens Document 20130755532 recorded in the official records of Los Angeles County, California on May 20th, 2013.

106.    EXHIBIT 28 is the Grant Deed in favor of Bayline Holding for 70% and Levitical Holdings LLC, a Nevada Corporation of 30%.

107.    EXHIBIT 29 is the Deed of Trust in favor of Limelite Reconveyance, recorded in the official records of Los Angeles County, California Document Number 20151189072, on September 24th, 2015.

108.    EXHIBIT 30 is the Order Granting Relief from the Automatic Stay, recorded in the official records of Los Angeles County, California Document Number 20160301626, on March 18, 2016.

109.    EXHIBIT 31 is the GRANT DEED from Bayline Holding and Levitical Holding to Heidi M. Lobstein, recorded in the official records of Los Angeles County, on April 5th, 2016, document number 20160371581.

110.    EXHIBIT 32 is the Notice of Assessment, recorded in the official records of Los Angeles County, Document Number 20170535425, on May 15th, 2017.

111.    EXHIBIT 33 is the Notice of Assessment, recorded in the official records of Los Angeles County, Document Number 20170535425, on May 15th, 2017.

112.    The plaintiff falls within the class of borrowers who can challenge a trustee's sale. (*Robinson v. Countrywide Home Loans, Inc.* (2011) 199 Cal.App.4th 42; Gomes v. Countrywide Home Loans, Inc. (2011) 192 Cal.App.4th 1149.

113.     The borrower may seek to set aside the trustee's sale for irregularities that are prejudicial. (See *Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 700 [person challenging sale must show that the failure to comply with procedural requirements for a foreclosure sale caused prejudice].)

114.     The appointment of the trustee / substitution of trustee was void as a result of being executed without actual authority to do so and there exists a serious break in the chain of assignments where Chase claims to be the successor by assignment, but then the US Bank as Trustee continued to act as owner, and recorded a chain of fraudulent substitutions of trustees without authority to do so.

115.     The process of recording the notice of default after substitution of trustee is not only a violation of the civil code and non-judicial foreclosure process, but also grounds entitling the Plaintiff for monetary relief, compensatory damages of one million dollars, and exemplary damages of three times the amount in the sum of three million dollars in the event of default.

116.     This defect constitutes a void foreclosure and the court can either set-aside and vacate the foreclosure, or, in this instance, award monetary compensation to the Plaintiff based on the fair market value of the property of three million dollars, and treble those damages, or nine million dollars in the event of default.

117.     As stated above, the trust was closed at the time, and a violation of the agreement that the lender cannot acquire assets after the trust was closed; and especially falsely claimed they possessed the original note and deed of trust when they did not.

118.     The entire assignment of deed of trust is a sham, recorded in the official records is a felonious series of actions which almost led to the entire collapse of the country's financial institutions.

119.     It is a clear act of felonious intent to record false documents in the official records; steal the Plaintiffs equity in his home to profit by fraudulently imposing trumped up charges on Plaintiff's account.

120.     All the criminal activity, the felonious documents, the fraudulent execution of documents, the falsely imposed charges, all were done for the purpose of selling the Plaintiff's homestead home and stealing her equity.

121.     The criminal and void mortgages and recorded documents were intended to cause and did cause the Plaintiff to suffer severe emotional distress.

122.     Even the notice of sale seeks to impose interest, late charges and other fees which were neither due nor owing.

123.     The Defendant's agent and did the conduct complained of, including the recording and notice to the plaintiff for the purpose and was known to cause, was intended to cause, and did actually and proximately cause the Plaintiff to suffer severe emotional distress, upset, aggravation, loss of sleep, and personal injury.

124.     Said conduct of the employees and participation in their recordation of the fraudulent document in bank records and in the public records is a felony and fraud.

125.     The defendants knowingly and/or recklessly engaged and participated in a continuous course and scheme of deceitful conduct to inflate the value of appraisals, including the Plaintiff's home, to close more home loans so that they could increase the volume and value of the loans they were selling to plaintiff and investors as securitized Mortgage Backed Securities (MBS).

126.    The defendants engaged in acts, practices and a course of conduct that included misrepresenting the true nature of appraisals performed on properties serving as collateral for the MBS sold to investors and they made, or participated in making, untrue and misleading statements of material fact and omitted to state material facts necessary to make their statements not misleading, including the Plaintiffs home.

127.    The purpose and effect of these deceitful schemes was to induce investors to rely upon the overstated ratings, understated LTV ratios and other false information regarding the loan underwriting and appraisal procedures employed by defendants and to cause the Plaintiff to suffer financial harm by loss of value in her home, loss of equity in her home and the loss of her home to a fraudulent foreclosure based on false and forged documents where the Lender has been paid in full TWICE ALREADY.

128.    The defendants had actual knowledge of the misrepresentations and omissions of material facts, or acted with reckless disregard for the truth of those misrepresentations made in connection with the offering and selling of the Certificates to the public and the actual and proximate cause of this misconduct caused financial harm to the Plaintiff.

129.    The defendants knowingly and recklessly misrepresented the risks and true nature of the collateral supporting the Certificates, which was included in the Registration Statement and Prospectus Supplements for each series of the Certificates and material to investors' purchases of the Certificates which has caused the Plaintiff financial harm as prayed.

130.    Plaintiff has performed all the duties and obligations she was required to perform under the mortgage agreement, which has been fully satisfied twice over.

131.    Defendants, and each of them, have slandered the title of the Plaintiff, harming her creditworthiness, and destroyed her borrowing power on the property without having any interest thereon or after already being paid in full.

132.    That as a result, the notes secured by the mortgages, the mortgages, assignments, and judgment are all fraudulent and void ab initio as a part of a scheme or plan to defraud the Plaintiff and others similarly situated as a regular scheme for which the class action settlement has fully compensated the Defendants; and for the OCC who has sanctioned and punished the Defendant, and as a result of all the allegations contained herein in this suit, the notes secured by the mortgages, the mortgages and the assignments thereon all must be stricken as fraudulent and void ab initio.

133.    That foreclosure is an equitable remedy, and the Defendants, and each of them, are barred from recovery as a result of their unclean hands due to the misconduct alleged herein, and worse, for their criminal violations by the OCC and the stipulation for liability by reason of a sixty nine million dollar settlement to the Plaintiff's lender.

134.    The underlying misconduct of the Defendants, and each of them, is the violation of the 28 USC §1331 of federal Trust Indenture Act of 1939, as amended, (the "TIA"), 15 U.S.C. §77aaa, et seq; as well as direct violation of California  Civil Code Section 2924, 2934, and 2932.5 and California Penal Code Section 115 that says it is a felony to record a false document that affects the title to residential properties of not more than four units.

135.    California Penal Code Section 470(a) – (c) makes the conduct of the Defendants, and each of them, illegal, and void as fraud and forgery.

136.    Plaintiff further refers to herein, and incorporates by reference, Exhibits 1- 33, inclusive, clearly showing the Defendants, and each of them, knew their conduct was fraudulent, by their act of Concealment of Assets and multiple violations of Federal and State Laws.

137.    Said recording of the fraudulent assignment of a Deed of Trust, constitutes separate violations of the same statutes, both State and Federal, as set forth above, and deprives the Plaintiff of his US and California Constitutional Due Process rights, by depriving her of her property unlawfully without the due process of law and the Equal Protection of the Law.

138.    Because Defendant's fraudulent execution of the Substitution of Trustee; and their knowledge of their fraud by their act of rescinding the first Notice of Default; clearly deprives them of any statutory protection provided to a valid Trustee.

139.    The Defendants, and each of them, co-conspired to commit fraud upon the Plaintiff and other homeowners similarly situated and admitted to having actual knowledge of the same as early as 2012 when they filed a class action lawsuit against the foreclosing trust for the precise misconduct.

140.    The Defendants, and each of them, have committed a pattern of mortgage fraud and other related acts wrongfully committed by the Defendants, and each of them, and established a pattern of wrongful behavior, a criminal conspiracy and joint venture between the defendants and each of them and their lawyers, to harm the Plaintiff and others similarly situated.

141.    The Defendants, and each of them, showed a pattern and practice sufficient to warrant Plaintiffs' claims for Civil Conspiracy against Defendants, and each of them, jointly and severally, for the violations as pled herein.

142.    Defendants knew that the conduct complained of herein was fraudulent, and
benefitted and attempted to benefit financially therefrom to the economic and
emotional detriment of the Plaintiff.

143.    That, after their fraudulent conduct, it was mailed by means of the US Mail or
other means of interstate commerce and mail services, to deliver the fraudulent
document to be recorded with the Official Records of this County.

144.    That the fraudulent documents were mailed across state lines, using means of
interstate commerce, in furtherance of conspiracy of the Defendants, and each of them.

145.    That, when the Defendants and each of them, knowing that the documents, or
reasonably should have known the documents were in willful violation of the law and
recorded the forged documents with the County, the Defendants, and each of them,
acted to further the conspiracy with each of the other Defendants, and furthered the
Defendant and each of their violations of the Federal Fair Debt Collection Practices
Act ("FDCPA"), 15 U.S.C. §  1692 et. seq.;

146.    That, when Defendants with the knowledge that the documents, or reasonably
should have known the documents were fraudulent and forgeries, they willfully and
volitionally violated the Racketeering, Conspiracy to Engage in a Pattern of
Racketeering Activity, (RICO) 18 U.S.C. 1961 et seq.;

147.    That, as a result of that higher fiduciary duty standard, special skill and training,
when Defendants, and each of them, presented for recording to the County Recorder
documents which they knew were fraudulent; they, as a fiduciary, had the special skill,
or should have had the special skill and knowledge, to know that the document
presented to record were, in fact, fraudulent; and in so doing knew they would be
breaching the special fiduciary duties owed the Plaintiff.

148.    That, when Defendants, and each of them, with the knowledge that the documents and bank entries, or reasonably should have known the documents and bank entries were fraudulent; the defendants and each of them committed, and acted to further the conspiracy with the other Defendants, in violations of the 28 USC §1331 of federal Trust Indenture Act of 1939, as amended, (the "TIA"), 15 U.S.C. §77aaa, et seq  and 18 U.S.C. 1964, (Civil Rico Remedies), a predicate act for Civil Conspiracy.

149.    That, when Defendants, knowing that the documents and bank entries were fraudulent, they committed acts, and acted to further the conspiracy with the other Defendants, in their violations of the 28 USC §1331 of federal Trust Indenture Act of 1939, as amended, (the "TIA"), 15 U.S.C. §77aaa, et seq.

150.    That, when the Defendants, and each of them, knowing that the documents they have are not authentic, as alleged by the lender in this case, they have violated the terms of the statute,

151.    That violation of 28 USC §1331 of federal Trust Indenture Act of 1939, as amended, (the "TIA"), 15 U.S.C. §77aaa, et seq and recited California Code all constitute the underlying crime for the civil conspiracy claim in this complaint.

152.    That, when the Defendants, and each of them, knowing that the documents, or reasonably should have known the documents and fraudulent bank entries willfully and volitionally committed, and acted to further the conspiracy with the remaining Defendants, to assist them in their violations of the Statute 28 USC §1331 of federal Trust Indenture Act of 1939, as amended, (the "TIA"), 15 U.S.C. §77aaa, et seq.

153.    That, when Defendants, and each of them, knowing that the documents and bank entries, or reasonably should have known the documents were forgeries, fraudulently executed and fraudulently notarized, willfully and volitionally entered

false information in the bank records and furthered their violations of the Statute 28 USC §1331 of federal Trust Indenture Act of 1939, as amended, (the "TIA"), 15 U.S.C. §77aaa, et seq as they themselves admit in their own class action.

154.     Defendants cannot logically or equitably assert that the Plaintiff did not suffer from the exact same misconduct that they themselves sued the Trust for committing, it is an admission of fact that they knew the misconduct occurred, were compensated for that misconduct, and yet they failed and refused to credit the Plaintiff for their recovery twice of the subject mortgage, and instead, seek to foreclose for yet a third recovery.

155.     At various times and places partially enumerated in Plaintiffs' documentary material, all Defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a Criminal Enterprise of individuals who were associated in fact and who did engage in, and whose activities did affect, interstate and foreign commerce, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(b) and directly violated 28 USC §1331 of federal Trust Indenture Act of 1939, as amended, (the "TIA"), 15 U.S.C. §77aaa, et seq as a predicate act for Civil Conspiracy.

156.     Defendant WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES WMALT SERIES 2007-0C1, committed acts of predatory lending in violation of state and federal banking laws, entitling the Plaintiff to an order striking the recorded documents, Exhibits 2-33, inclusive.

157.     All entitling the Plaintiff to monetary damages of three million dollars and treble damages of nine million dollars.

**FIRST CAUSE OF ACTION FOR**
**WRONGFUL FORECLOSURE**
**(AGAINST ALL DEFENDANTS)**
**(MONETARY DAMAGES AND EMOTIONAL DISTRESS DAMAGES)**

158.     Plaintiff incorporates herein by reference the allegations made in paragraphs 1

through 1-157, inclusive, as though fully set forth herein.

159.    Based upon the Exhibits 2-33, inclusive,  and allegations incorporated herein, the conduct of the Defendants clearly show the transfer process taken by the Defendants, and each of them, are wholly invalid; done without proper authority; and the Trustee's substitution and sale of the Plaintiff's Property by the fraudulently appointed Trustee, in violation of the statutes which are strictly construed governing the non-judicial foreclosure process, where the Plaintiff is not currently authorized to conduct business in the State of California makes the future sale invalid, unauthorized, based on forged and illegal Substitution of Trustee, forged and illegal assignments, all of which make them simply void ab initio.

160.    That the class action specifically states that the duties of the Defendant Trustee in this Case and in that case had obligations, including, "take physical possession of the Mortgage Files, and that the Mortgage Note and the Mortgage are properly endorsed and assigned to the Trustee. To ensure that the Mortgage Loans were properly conveyed to the Covered Trusts, the Governing Agreements also required the Trustee or its agent to review the loan files for each of the Mortgage Loans and to certify that the documentation for each of the loans was accurate and complete."

161.    Here, as in the class action, the Trustee CLEARLY FAILED to obtain the original documents; clearly failed to PROPERLY record the assignments and transfer title to the Trust (as the obtaining and transfer occurred after the trust was closed and when it was illegal to do so) and failed to properly prepare and record the legal assignments, instead resorting to felonious preparation of forged documents and recording them in the official records.  So, the lender sued the Trust and won, and admitted in the process that the Defendant Trust is liable to Plaintiff for the precisely

same misconduct.

162.    That the complaint further ADMITS that the "the Governing Agreements therefore require the securitization's Sponsor (or Seller), in this case, affiliates of WaMu, to cure, substitute, or repurchase any Mortgage Loans that materially breach those representations and warranties, or that do not have complete Mortgage Files, including on account of inadequate assignments or endorsements. Significantly, the Governing Agreements also require the Trustee, among others, to enforce the Seller's obligation to cure, substitute, or repurchase such Mortgage Loans."  As a result of this promise, it is very likely that he lender was paid A FOURTH TIME by obtaining repayment from the sellers of the security.

163.    The lawsuit does not stop there with admissions of wrongdoing by the Defendant Trust against the Plaintiff.  "The Governing Agreements impose certain duties on the Trustee, in addition to those duties imposed by the TIA and Delaware law. They also establish the Trust as a Real Estate Mortgage Investment Conduit ("REMIC") under the Internal Revenue Code, which enables the Trust to avoid tax liability on income generated from the underlying Mortgage Loans – if the Trust gains valid title over the underlying Mortgage Loans within three months of its creation and if certain other criteria are met. Qualifying as a REMIC is critical to the Trust's ability to make the payments promised to MBS holders. Importantly, the Governing Agreements also refer to and incorporate the MLPA. The lawsuit goes on to ADMIT that the documents were NOT timely acquired, NOT done within the Three months, and in fact, they waited until after the trust was CLOSED AND WHAT THEY DID WAS ILLEGAL AND VOIDED THE MORTGAGE IN THE PROCESS.

164.    Fourth, the Depositor sold the MBS to an underwriter, in this case, WaMu

Capital Corp. ("WCC"), another affiliate. The Depositor remits the money from that sale to the Seller, which may use it to originate or purchase more mortgages. Meanwhile, the underwriter markets and sells the MBS to investors. At this point in the securitization process, the Seller is also sometimes referred to as the Sponsor. 23. MBS entitle their holders to the cash flows generated from the Trust's pool of Mortgage Loans. The Trust, or securitization transaction, is structured such that the risk of loss is divided among different levels, or "tranches." Each tranche of the Trust has a different level of credit risk and reward (the interest or yield), including different levels of credit enhancement. One form of credit enhancement is overcollateralization, which means that the total principal balance of the Mortgage Loans in the Trust exceeds the aggregate amount of securities issued and sold by the Trust. Another example of credit enhancement is excess interest, which means that the amount of interest collected on the underlying Mortgage Loans for each payment period is expected to be greater than the interest distributable to the MBS holders and the expenses payable by the Trust during that period. 24. Following the sale of the MBS, the Servicer is responsible for the collection of payments from the underlying mortgagors, including through foreclosure if necessary. Those payments are then distributed to the MBS holders in accordance with the tranche structure. 25. Thus, the value of the MBS, and their credit rating, depend primarily on the riskiness of the underlying mortgages, which is reflected in the Seller's representations and warranties concerning the quality of loans in the pool and, secondarily, to the extent that borrowers default on their payments, on the Trust's ability to foreclose on the collateral and recover the unpaid loan balance. If the loans underlying the MBS suffer payment defaults in excess of the assumptions built into their credit enhancement and securities'

ratings, or the underlying properties' mortgages cannot be effectively foreclosed and the properties sold following default, the securities will be re-rated and the value of the MBS will decline.

165.     The class action goes on to lay out in great detail (Class Action Paragraphs 31 – 36 all the duties of the Trustee to acquire the original loan files, etc.  The Defendant Trust breached these litanies of duties, all to the great harm of the Plaintiff herein as prayed.

166.     The Complaint further goes on from Paragraphs 36 to 41 the duty to get the seller to repurchase the defective mortgages, and complains gravely how this was not properly accomplished in every case, leaving the issue as to whether this mortgage was even re-purchased giving the Trust a FOURTH RECOVERY AND UNJUSTLY ENRICHING THE DEFENDANTS AND EACH OF THEM THAT MUCH MORE.

167.     The Class action also lays out the violation of the Trusts misconduct pursuant to Federal Statute, 15 USC § 77ooo(c) which says, in relevant part, that "The Trustee's Duties And Obligations Under The TIA 41. Under the TIA, a trustee must "give to the indenture security holders. . . notice of all defaults known to the trustee, within ninety days after the occurrence thereof. . . ." 15 U.S.C. §77ooo(b) (citing 15 U.S.C. §77mmm(c)). Defendants consequently had to inform MBS holders of breaches of the Governing Agreements within ninety days after their occurrence. 42. In case of default, the TIA mandates that a trustee must exercise "such of the rights and powers vested in it by such indenture, and to use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs." 15 U.S.C. §77ooo(c). 43. As set forth below, Defendants are liable to Plaintiff and Class members for failing to exercise their rights and powers under the Governing

Agreements. That these violations also directly harmed the Plaintiff because the Plaintiff has now paid the the Defendant the cost of the mortgage FOUR TIMES.

168.     Thus, the Trustee's sale of the subject property, if any, is and was void and without actual authority to do so; the subject deed of trust, should be stricken as void ab initio.

169.     Because Defendant WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES WMALT SERIES 2007-0C1,'s fraudulent execution of the Substitution of Trustee; execution of a fraudulent assignment of Deed of Trust, and their knowledge of their fraud by their act of rescinding the first Notice of Default; direct violation of 28 USC §1331 of federal Trust Indenture Act of 1939, as amended, (the "TIA"), 15 U.S.C. §77aaa, et seq , clearly deprives them of any statutory protection provided to a valid Trustee, shows that they, as an unauthorized Trustee cannot even assert a claim of good faith in dealing with persons who apparently held legal title. Even if they tried, it is not in itself sufficient basis for relief[3].

170.     Defendant WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES WMALT SERIES 2007-0C1, was not the lawful holder and owner of the subject unpaid mortgage, and any appointed trustee had no authority to act on behalf of the beneficiary when unauthorized, forged and illegal Substitution of Trustee and fraudulent assignment of mortgage, were filed and recorded with the County

---

[3] 6 *Angles, Inc. v. Stuart-Wright Mortgage, Inc.* (2001), 85 Cal. App. 4th 1279 at 1285 where the Court stated: "it is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties."  Therefore, a forged "robo-signed" signature as shown in Exhibits 2-16 attached hereto, the Court in the instant case should be inclined to permanently stay and vacate the foreclosure documents of the Subject Property.  Additionally, in *Bank of America v. La Jolla Group II* (2005)129 Cal.App.4th 706 , 28 Cal.Rptr.3d 825, the California Court of Appeals held that if a trustee is not contractually empowered under a deed of trust to hold a sale, it is totally void.  See also *Trout v. Trout,* (1934), 200 Cal. 652 at 656.

Recorder, and where the Trustee knew that the Trustee of the Trust was being sued for breach of duties which were in place to protect the Plaintiff under the subject mortgage and which purported to give Defendant itself fraudulent authority and therefore, it was unauthorized to initiate and attempt to carry out the foreclosure sale of the Subject Property and NOT entitled to ANY statutory protection which can be asserted by a Trustee as provided under Section 2924(b).

171.    The Defendants, and each of them, knew, or reasonably should have known that by institution of a fraudulent foreclosure as alleged herein, the Plaintiff would suffer severe emotional distress, aggravation, upset, trauma, loss of sleep, and manifestations of the emotional distress caused by the fraudulent recording of forged documents with the intent to foreclose without standing to do so.

172.    That in the event the court permits a foreclosure sale, it will be wrongful and the Plaintiff has already suffered, and will suffer severe emotional distress that was actually and proximately caused by the wrongful conduct of the Defendants, and each of them, and their and employees.

173.    Wherefore the Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION

### (Violation of the Trust Indenture Act of 1939, 53 Stat. 1171)

174.    Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 157, inclusive, as though fully set forth herein.

175.    Congress enacted the Trust Indenture Act of 1939 ("TIA"), 53 Stat. 1171, 15

176.    U.S.C. §77aaa, et seq., to ensure, among other things, that investors in certificates, bonds, and similar instruments have adequate rights against, and receive adequate performance from, the responsible trustees. 15 U.S.C. §77bbb.

177.    That the Plaintiff falls within the class of individuals who are protected by that statute since it is their home which the statute governs as the investment, and if the Trustee violates the terms, as occurred here, the homeowner would end up paying their mortgage four possibly five times, as may occur here.

178.    The Covered Trusts' Governing Agreements are "indentures," and each of the Defendants is an "indenture trustee," within the meaning of the TIA. 15 U.S.C. §77ccc(7), (10).

179.    Moreover, the TIA applies to and is deemed to be incorporated into the Governing Agreements, and the related MBS. 15 U.S.C. §77ddd(a)(1).

180.    Defendants violated multiple provisions of the TIA which actually and proximately harmed the Plaintiff and admitted to by the Defendant investors / Lender.

181.    First, the TIA requires that Defendants inform MBS holders of breaches of the Governing Agreements within ninety days after their occurrence. 15 U.S.C. §77ooo(b) (citing 15 U.S.C. §77mmm(c)).

182.    Here, there were numerous defaults, including the failure of the Seller and Depositor to cure defects in the Mortgage Loan Files and/or to substitute conforming loans for the defective loans in the Covered Trusts.

183.    Given the great importance of those defaults to the MBS holders' interests, Defendants had no good faith reason for failing to provide notice of those defaults.

184.    Accordingly, by failing to provide such notice, Defendants violated the TIA.

185.    Second, in case of default, the TIA requires that Defendants exercise their rights and powers under the Governing Agreements as a prudent person would, under those circumstances, in the conduct of his own affairs. 15 U.S.C. §77ooo(c).

186.    Again, given the obvious importance of the defaults set forth in the preceding

paragraph and herein, which impaired the rights of Plaintiff as admitted by the MBS

holders in their class action, to collect their full principal and interest and which

reduced the value of the MBS, any prudent person under those circumstances would

have exercised all of his rights to, among other things, obtain complete Mortgage Loan

Files, cure any defects in the Mortgage Loan Files and/or substitute conforming loans,

and a prudent person would have exercised those rights promptly.

187.    Indeed, with the number of delinquent and defaulting mortgages in the Covered

Trusts increasing, as a result, inter alia, of such defects, the MBS holders could have

been protected from the resulting losses only through the Trustee's exercise of those

rights – which were designed precisely to limit the number of delinquent and defaulting

mortgages in the Covered Trusts.

188.    By failing to exercise their rights in those circumstances, Defendants violated

the TIA and harmed the Plaintiff who has now paid her mortgage 3 to 4 times over.

189.    Defendants are liable to Plaintiff and the Class for damages incurred as a result

of their violations of the TIA in an amount prayed below.

190.    Because of the foregoing, the Court should enter an order finding that

Defendant Trust has violated the fiduciary duties owed the Lender and deem them unfit

to act as the Trustee in this action as having a conflict of interest, and, as a result,

appoint a new court appointed trustee for the remainder of these proceedings as the

current trustee cannot be trusted and should be disqualified as unqualified, negligent

and criminal in their activities.

191.    Plaintiff respectfully requests that the court declare that the appointed trustee,

is Not a VALIDLY APPOINTED Trustee; is NOT authorized to Do business in the

State of California; has withdrawn their agent for service of process; fraudulently

executed and recorded false documents, including Exhibits 2-33, inclusive; and

192.    An Order finding that Exhibits 2-33 void ab initio; fraudulent; and stricken.

193.    That the Plaintiff is entitled to monetary and compensatory damages as a result against the Defendants, and each of them, in the sum of ten million dollars, and treble that for thirty million dollars in the event of default.

194.    Wherefore Plaintiff Prays for Relief as Set Forth Below:

**THIRD CAUSE OF ACTION**
**BREACH OF CONTRACT**

195.    Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 157, inclusive, as though fully set forth herein.

196.    The mortgage (deed of trust) constitutes an agreement between the parties.

197.    As set forth in detail above, the Plaintiff is the third party beneficiary under the MBS incorporated the Governing Agreements, and the Governing Agreements as a matter of law incorporate the provisions of the TIA.

198.    Under these contracts, and at common law, Defendants owed the MBS holders a duty to perform certain acts, including, without limitation:

199.    To take all necessary steps to perfect the ownership rights in the Mortgage Notes and collateral for the Covered Trusts, and to ensure that other parties to the Governing Agreements performed their responsibilities to permit these rights to be perfected;

200.    To review the Mortgage Loan Files to ensure that the Mortgage Loans were properly documented and publicly filed, and that there were no missing, incomplete or defective documents in the loan files, and where documents were missing, incomplete and defective to take reasonable acts to cause the other parties to the Governing Agreements to correct these Mortgage Loan irregularities (and to prevent unlawful

foreclosures as occurred against the Plaintiff in this instance);

201.      To review the endorsements to the original Mortgage Notes to ensure that there was a complete chain of endorsements from the Seller or the originator to the Trustee for the Covered Trusts, and where endorsements were missing, to take reasonable steps to ensure that the endorsements were obtained by or from other parties to the Governing Agreements (which was circumvented here by the Defendants, and each of their use, of fraudulent robo-signed documents);

202.      To review the loan files to ensure that there was a duly executed assignment of mortgage for each of the Mortgage Loans in the Covered Trusts, and where assignments were missing to take reasonable acts to ensure that the necessary assignments were obtained by or from other parties to the Governing Agreements;

203.      To identify those Mortgage Loans for which there was missing, defective and/or incomplete documentation, and where defective and/or incomplete documentation was identified to take reasonable steps to ensure that the irregularities were corrected by other parties to the Governing Agreements, and that the mortgages and assignments were properly filed in the land records.

204.      Defendants' breach of their duties set forth in the Governing Agreements as described above, meant that Plaintiff and the MBS holders did not receive the consideration they bargained for, i.e., they did not receive securities that were collateralized by enforceable Mortgage Loans.

205.      Because the Defendant Investors / Lenders claimed these violations reduced collections on the Mortgage Loans in the Covered Trusts, diminished the MBS' value, and caused Plaintiff's and the Class' losses, including on sales of MBS, that Defendants rather than MBS holders should bear and is the basis for the court finding

that the Defendants breached the agreement by suing and recovering money for the subject mortgage from third parties and not crediting the Plaintiff with those recoveries before foreclosing on Plaintiff.

206.    In addition, once an event of default occurred under the Governing Agreements, or a default occurred under the TIA, Defendants had the obligation to exercise all rights and powers vested in them by the Governing Agreements, and to use the same degree of care and skill in their exercise as a prudent man would, under those circumstances, in the conduct of his own affairs.

207.    In violation of those duties, the Defendants acted recklessly, wantonly, and without regard, acted illegally, securitized the subject mortgage into the closed trust, added charges to the mortgage in order to cause a default, and under those agreements, instead acted unlawfully, fabricated recorded documents, imposed charges that were neither due nor owing, and committed a series of breaches by collecting money and not crediting the subject mortgage.

208.    The Defendants collected the private mortgage insurance and did not even credit that, presumably because the trust was stealing from the investors as well.

209.    This all constitutes a material breach.

210.    An "Event of Default" occurs under several situations defined in the Governing

211.    Agreements, including PSA § 7.01(a)(ii): Failure on the part of the Servicer duly to observe or perform in any material respect any other of the covenants or agreements on the part of the Servicer contained in the Certificates or in this Agreement which continues unremedied for a period of 60 days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Trustee, or to the Servicer and the Trustee by the Holders of

Certificates evidencing Percentage Interests aggregating not less than 25% of REMIC III.

212.    There were material breaches of the Governing Agreements, including by the Servicer to, for example:

213.    Failure to notify the Trustee and others of breaches of the representations and warranties that applied to the mortgages in the Covered Trusts;

214.    Failure to maintain accurate and adequate loan and collateral files in a manner consistent with prudent mortgage servicing standards which directly harmed the Plaintiff and will continue to harm her until restrained;

215.    The investors claimed the Trust failed to properly and lawfully demand that deficient mortgage records be cured (when the true facts were that the mortgage was paid in full two to three times, and that is why they failed to notify the Defendant lender of the deficiency, there was none);

216.    The Defendants charged Plaintiff unnecessary servicing fees and overcharging for its services; and

217.    The Defendants placed their own financial interests above that of the Plaintiff, intentionally inducing a breach of the mortgage agreement as a result of their greed, negligence and incompetence.

218.    The Defendants, and their responsible officers, had notice of these and other defaults, through among other things, defaults and delinquencies in the Covered Trusts, foreclosure actions brought on behalf of the Covered Trusts, and, more recently, widespread news coverage of foreclosure fraud.

219.    These Events of Default impaired the rights of Plaintiffs to be obligate only to pay the principal and interest as requested by the investors / MBS holders, but instead,

due to the ADMITTED misconduct of the servicers, caused the subject mortgage to go into default so they could triple or quadruple their recovery and interfered with the contract which only obligated the Plaintiff to pay the Lender the principal and interest one time, not the four times as the Defendants committed. principal and interest, and reduced the value of the MBS.

220.    Accordingly, under those circumstances, a prudent person would have exercised every effort NOT to cause the Plaintiff to go into default and NOT cost its investors money at all, but instead, acted for the purpose of greed and to cause the Plaintiff to suffer financial harm for the purpose of triple or quadruple recovery of the mortgage amount.

221.    By wrongful action, Defendants and each of them breached the Governing Agreements between the Plaintiff and Defendant and even breach the agreements amongst themselves, thereby barring them from the right to any more recover and to disgorge them of their profits and return them to the Plaintiff..

222.    Defendants are liable to Plaintiff for the losses they caused as an actual and proximate and direct result of Defendants' failure to perform their contractual obligations under the Governing

223.    Under those agreements, the Plaintiff performed all of her duties she could perform, except those which she was prevented or excused from performing by the misconduct of the Defendants and full payment by the third parties to the Lender on behalf of, or should have credited to, the Plaintiff.

224.    A non-judicial foreclosure sale therefore would only be conducted in violation of state and federal law after the Defendants have been paid IN FULL MULTIPLE TIMES OVER, and any sale would be void ab initio and pursuant to the Government

Save Your Home Programs, the Consent Orders and the Independent Foreclosure Review, and unjustly enrich the Defendants even more, in violation of the fact that foreclosure is supposed to be an equitable remedy, not inequitable as occurred here.

225.    Plaintiff is entitled to compensatory damages of the fair market value of the property and treble damages for exemplary damages in the event of default.

226.    Moreover, the Defendant never had legal authority to foreclose because the instrument (Deed of Trust), which permitted foreclosure if the borrower was in default, is void as it was improperly assigned and/or transferred to the Defendants through forged and improperly notarized and unauthorized executed documents.

227.    Therefore, the Deed of Trust could not provide a basis for a foreclosure, and the non-judicial foreclosure would be fraudulent and void ab initio.

228.    The Plaintiff was the victim of the scheme created by the Defendant trust to award the servicer for imposing fraudulent charges, fraudulent inspection fees, and putting him through the fraudulent foreclosure.

229.    Accordingly, Plaintiff hereby requests an order of this Court finding that the Trustee was not authorized to act; there was no valid Trustee, the Trustee was barred from ever scheduling or, in the event a sale is not stayed, never had authority to hold a Sale and find that any sale that occurs thereunder is fraudulent and therefore void ab initio.

230.    Wherefore the Plaintiff Prays For Relief As Set Forth Below.

**FOURTH CAUSE OF ACTION**
**DECLARATORY RELIEF**
**DEEM MORTGAGE PAID IN FULL AND DISGORGE PROFITS**
**(AGAINST ALL DEFENDANTS)**

231.    Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 157, inclusive, as though fully set forth herein.

232.    The mortgage has been paid in full multiple times.

233.    Plaintiff is therefore entitled to an order that the Exhibit 2-33 be stricken, the Deed of Trust be deemed void ab initio and cancelling such Deed, if the court finds that there was not a bona fide purchaser for value, then quieting title in favor of the Plaintiff, but in the event there was a bona fide purchaser for value, the court instead award the Plaintiff one million dollars for compensatory damages and three times that amount for exemplary damages.

234.    Wherefore Plaintiff Prays for Relief as Set Forth Below.

**FIFTH CAUSE OF ACTION FOR
BREACH OF CONTRACT
(AGAINST THE FORECLOSING DEFENDANTS)**

235.    Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 157, inclusive, as though fully set forth herein.

236.    A mortgage is a contract pursuant to California Civil Code section 2920(a).

237.    The Defendants have been paid in full yet continue to seek payment for an already satisfied mortgage.

238.    That the Defendants admitted that they were in breach by adding fees, costs and charges that were neither due or owing and sued each other over these breaches, deeming the breach of this mortgage agreement an already litigated matter of law.

239.    As a result of the foregoing, the mortgage which is used to secure the property is breached by the Defendants, and each of their, conduct complained of herein.

240.    That as an actual and proximate cause of said breach, the Plaintiff suffered damages in an amount according to proof or three million dollars, and exemplary damages of nine million dollars in the event of default;

241.    That as an actual and proximate cause of said breach, the Plaintiff is entitled to

declaratory relief finding that the Mortgage (security instrument) has been breached by the Defendants, and each of them, and are thus void ab initio on the basis of fraud and thus an order should issue finding the mortgage contract deemed void and no longer enforceable.

242.    Therefore, the Defendants were bound to act in accordance with California law when initiating and consummating the foreclosure sale of the Subject Property.

243.    Specifically, the Defendants were bound to obey and conform their actions to California Civil Code Section 2934, which they clearly have not done in the instant case.

244.    As a direct and proximate cause of Defendants' breach of contract, Plaintiff has suffered damages in an amount to be proven at trial, but in the event of default, one million dollars in compensatory damages and three million dollars for exemplary damages.

### SIXTH CAUSE OF ACTION FOR
### FAIR DEBT COLLECTION PRACTICES ACT
### (AS TO WASHINGTON MUTUAL MORTGAGE PASS-THROUGH
### CERTIFICATES WMALT SERIES 2007-0C1,)

245.    Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 157, inclusive, as though fully set forth herein.

246.    The Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. §§ 1692-1692p) has been violated by the Defendant WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES WMALT SERIES 2007-0C1, based on the acts complained of and incorporated herein.

247.    At the time the Defendants claimed they acquired the subject note and mortgage, they claimed it was in arrears and therefore the FDCPA applies to the Defendants as debt collectors.

248.    On or about May 11th, 2010, and continuing to the Present, the Defendant WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES WMALT SERIES 2007-0C1, made demands by causing to be mailed, or mailing demands for payments for which they were not entitled to recover, by means of the US Mail; by wire by use of the phone systems and internet; and other conduct to be proven at the time of trial.

249.    That the Defendants have been paid in full and have not credited those payments to the mortgage and continue to attempt to collect the same as unpaid, when the true facts are, is that the mortgage has been paid.

250.    As a result of that conduct, the Defendant violated the provisions of the Federal Fair Debt Collection Practices Acts on multiple and separate occasions.

251.    Plaintiffs are entitled to recovery in the statutory sum of $1000 for each separate violation, in the sum according to proof at the time of trial but one million dollars in the event of default and treble damages of three million dollars;

252.    Wherefore Plaintiff prays for relief as set forth below.

**NINTH CAUSE OF ACTION FOR
CIVIL CONSPIRACY
(AS TO WASHINGTON MUTUAL MORTGAGE PASS-THROUGH
CERTIFICATES WMALT SERIES 2007-0C1**

253.    Plaintiffs incorporate paragraphs 1 to 157, inclusive, herein, as though set forth herein in full.

254.    An agreement between two or more parties existed, including the defendant WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES WMALT SERIES 2007-0C1, and each of them, and others;

255.    As alleged herein, the individuals agreed to perform an unlawful act, including, but not limited to those acts incorporated herein, or to do a lawful act by unlawful

means, also as incorporated herein;

256.     The Defendants sued each other over these agreements, which are governed by the Federal Statutes

257.     The fraudulent preparation and recording of the forged documents, Exhibits 2-33; the violations of the numerous statutes; the mail fraud; the wire fraud; the bank fraud, and all acts incorporated herein, all constitute the doing of some overt act in pursuance of the conspiracy; and

258.     As an actual and proximate cause of the conspiracy, Plaintiff suffered actual economic and non-economic damages under the conspiracy as prayed below.

259.     Wherefore Plaintiff prays for damages as set forth below:

## PRAYER FOR RELIEF

260.     Wherefore, Plaintiff prays for judgment against the Defendants and each of them, jointly and severally, as follows:

261.     For a declaration of the rights and duties of the parties, specifically that the assignment of Deed of Trust on Plaintiff's residence was wrongful.

262.     For compensatory damages according to proof, but in the event of default, three million dollars;

263.     For exemplary and punitive damages in an amount according to proof, but in the event of default, nine million dollars.

264.     For an order disgorging the Defendants for ALL sums received from Plaintiff and third parties as a result of their willful and malicious attempt to quadruple their recovery from the Plaintiff for her mortgage in an amount according to proof

265.     For an order substituting the Trustee of the subject WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES WMALT SERIES 2007-0C1;

266.     For issuance of a judicial decree finding that the Trustee's Sale, if one occurs, is and was void and that Plaintiff is entitled to compensatory damages (three million in the event of default) and punitive damages (nine million in the event of default.

267.     To void and vacate the Trustee's Deed, if any there be.

268.     To vacate and set aside the fraudulent foreclosure, if any there be.

269.     To Quiet title in favor of the Plaintiff and against all Defendants and all others who claim to have an interest of any kind, in fee simple absolute, in the subject property: THE LAND REFERRED TO HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES, DESCRIBED AS FOLLOWS:

LOT 297, OF TRACT NO. 7668, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 83 PAGE(S) 1 TO 3 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

A.P.N.: 4214-013-008.  See Exhibits 1-2.

270.     To find in favor of Plaintiff and against all Defendants and to find that the foreclosure against the Plaintiff was void, fraudulent, and recorded in violation of statute, State and Federal law and vacate the following documents:

EXHIBIT 3 – DEED OF TRUST, RECORDED IN THE OFFICIAL RECORDS OF THE COUNTY OF LOS ANGELES, DOCUMENT NUMBER 04-2315302 ON SEPTEMBER 9TH, 2004.

EXHIBIT 4 -  is a Golden West Reconveyance, Document Number 05-3203718.

EXHIBIT 5 – DEED OF TRUST AND REQUEST FOR NOTICE OF DEFAULT recorded in the official records of Los Angeles County, Document 05-1583036 on July 6th, 2005.

EXHIBIT 6 is a Deed of Reconveyance recorded in the official records of Los Angeles County on December 30th, 2005, Record number 05-3238575.

EXHIBIT 7 is a deed of trust in favor of Mortgageit recorded in the official records of Los Angeles County on December 7th, 2005, record number 05-2991085.

Exhibit 8 is the Mers Substitution of Trustee and Full Reconveyance, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20070236103, on February 5th, 2007.

Exhibit 9 is the Mortgage Store Financial, Inc., Deed of Trust, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 06-2842065, on December 21st, 2006.

Exhibit 10 is an Assignment of Deed of Trust created and by California Reconveyance Company to Bank of America, NA as successor by merger to LaSalle Bank, NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2007-0C1 Trust in the 12/01/2006.

EXHIBIT 11 is a Substitution of Trustee and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20070236103, on February 5th, 2007.

EXHIBIT 12 is a fraudulent notice of default, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20091620620, on October 27th, 2009 recorded by the convicted California Reconveyance Company.

Exhibit 13 is a Notice of Trustee's Sale and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20100136998, on January 29th, 2010 recorded by the convicted California Reconveyance Company.

Exhibit 14 is a Substitution of Trustee and Full Reconveyance, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20101819203, on December 9th, 2010.

Exhibit 15 is a Substitution of Trustee and Full Reconveyance, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20101819203 on December 9th, 2010 recorded by the convicted California Reconveyance Company.

EXHIBIT 16 is a Notice of Trustee's Sale, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20110178407 on February 2nd, 2011 recorded by the convicted California Reconveyance Company.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 17 is a Substitution of Trustee and Full Reconveyance, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20120302504 on February 27th, 2012 recorded by the convicted California Reconveyance Company.

EXHIBIT 18 is a Corporate Assignment of Deed of Trust, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20120703205 on May 10th, 2012 recorded by the JPMorgan Chase Bank, who claimed originally to be a servicer, and in this document claims to be the successor in interest to the defunct Mortgage Store and purported successor, the Trust, and the void mortgage.

EXHIBIT 19 is a NOTICE OF TRUSTEE'S SALE, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20121675620 on November 5th, 2012 recorded by the same convicted California Reconveyance Company.

EXHIBIT 20 is a SUBSTITUTION OF TRUSTEE, and is recorded in the official records of the Recorders office in Los Angeles County, California, Document 20150551613 on May 13th, 2015 recorded by Trustee Corps.

Exhibit 20 purports to claim that U.S. Bank National Association has substituted the trustee, but as seen in Exhibit 18, JPMorgan Chase claims to be the assignee of the subject mortgage, and therefore there is no authority to substitute trustees by the assignor, US Bank.

EXHIBIT 21 is a Trustee Corps Notice of Trustees sale, and recorded in the official records of Los Angeles County, California 20150609241 on May 26th, 2015.

EXHIBIT 22 is a Trustee Corps Notice of Trustees sale, and recorded in the official records of Los Angeles County, California 20151072190 on August 31st, 2015.

EXHIBIT 23 is an admission of fraud and a Notice of Rescission of Notice of Default and Election to Sell Under Deed of Trust, and recorded in the official records of Los Angeles County, California 20161343577 on October 31st, 2016.

EXHIBIT 24 is another fraudulent Substitution of Trustee and recorded in the official records of Los Angeles County, California 20181079618 on October 31st, 2016, this time designating National Default Servicing Corporation.

EXHIBIT 25 is a short form deed of trust and assignments of rents by CAA Inc and recorded in the official records of Los Angeles County, California 20101843661 on December 14th, 2010.

EXHIBIT 27 is the Lis Pendens Document 20130755532 recorded in the official records of Los Angeles County, California on May 20th, 2013.

EXHIBIT 29 is the Deed of Trust in favor of Limelite Reconveyance, recorded in the official records of Los Angeles County, California Document Number 20151189072, on September 24th, 2015.

EXHIBIT 32 is the Notice of Assessment, recorded in the official records of Los Angeles County, Document Number 20170535425, on May 15th, 2017.

EXHIBIT 33 is the Notice of Assessment, recorded in the official records of Los Angeles County, Document Number 20170535425, on May 15th, 2017.

180.    Pursuant to Business and Professions Code §17203, that all Defendants, their successors, agents, representatives, employees, and all persons who act in concert with them be ordered to pay the Plaintiff by committing any acts of unfair competition in violation of §17200, including, but not limited to, the violations alleged herein.

181.    For civil penalties pursuant to civil conspiracy, statute, restitution, injunctive relief and reasonable attorney's fees according to proof.

182.    For reasonable costs of suit and such other and further relief as the Court deems proper.

183.    That during the pendency of these proceedings, the court find that real property is unique, and the Plaintiff would suffer irreparable harm if the home were sold and therefore issue a preliminary injunction and permanent injunction prohibiting the Defendant or any other person or entity from listing the subject property for sale or selling the subject property.

1    June 29, 2020

2

3    _____

4    HEIDI M. LOBSTEIN
     PLAINTIFF PRO SE

5    269 WESTGATE
     PRESCOTT, AZ 8305

6    phone: 310-427-1008
     email:  lobstein8@gmail.com

7

8

9    June 29, 2020    _____

10

11   _____

12   MARGUERITE DESELMS
     PLAINTIFF PRO SE

13   269 WESTGATE
     PRESCOTT, AZ 8305

14   phone: 310-427-1008
     email:  margdeselms@gmail.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Verification of Complaint**

2

3        I, HEIDI M. LOBSTEIN, am the plaintiff in this action. I am familiar with the factual

4   allegations in this complaint and TRO applications. Such facts are true as stated herein,

5   except as to those matters which are based on my information and belief, and as to those

6   matters, I believe them to be true.  I declare under penalty of perjury the foregoing is true.

7   Signed in YAVAPAI County, ARIZONA, on

8   June 29th, 2020

9

10   _____

11   HEIDI M. LOBSTEIN
     PLAINTIFF PRO SE

12   269 WESTGATE
     PRESCOTT, AZ 8305

13   phone: 310-427-1008
     mail:  lobstein8@gmail.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Verification of Complaint**

I, MARGUERITE DESELMS, am the plaintiff in this action. I am familiar with the factual allegations in this complaint and TRO applications. Such facts are true as stated herein, except as to those matters which are based on my information and belief, and as to those matters, I believe them to be true. I declare under penalty of perjury the foregoing is true. Signed in YAVAPAI County, ARIZONA, on

June 29th, 2020

_____

_____
MARGUERITE DESELMS
PLAINTIFF PRO SE
269 WESTGATE
PRESCOTT, AZ 8305
phone: 310-427-1008
email:  margdeselms@gmail.com

1

2

**CERTIFICATE OF SERVICE**

3

4
A true and correct copy of the foregoing 3RD AMENDED COMPLAINT has been
served VIA EMAIL on:

5

6

7
Steven M Dailey     cheri.marten@kutakrock.com, rebecca.wilson@kutakrock.com,
michelle.west@kutakrock.com, wendy.bonsall@kutakrock.com,
steven.dailey@kutakrock.com

8

9
Rebecca L Wilson     cheri.marten@kutakrock.com, rebecca.wilson@kutakrock.com,
mary.clark@kutakrock.com, wendy.bonsall@kutakrock.com,
steven.dailey@kutakrock.com

10

11

12
Dated:  June 29th 2020

13

14

15
HEIDI M. LOBSTEIN
PLAINTIFF PRO SE

16
269 WESTGATE

17
PRESCOTT, AZ 8305
phone: 310-427-1008

18
mail:  lobstein8@gmail.com

19

20

21
Dated:  June 29th 2020

MARGUERITE DESELMS

22
PLAINTIFF PRO SE

23
269 WESTGATE
PRESCOTT, AZ 8305

24
phone: 310-427-1008
email:  margdeselms@gmail.com

25

26

27

28

**PROOF OF SERVICE**
**[C.C.P. §1013A(3)]**

STATE OF ARIZONA                    )
                                   )          ss:
COUNTY OF YAVAPAI        )

     I am employed in the County of __YAVAPAI_____, State of __ARIZONA_____.  I am over the age of 18 years and am not a party to the within action.  My business address is _____

     On _____, I served the foregoing documents described as **PLAINTIFF'S 3RD COMPLAINT** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope, certified mail, return receipt requested or priority mail, and addressed as follows:

_____

    ___          **BY MAIL**

     *I deposited such envelope into the mail at __Prescott_____, Arizona.  The envelope was mailed with postage prepaid is affixed with postage thereon fully prepaid and deposited with the U.S. Postal Service in _Prescott_, Arizona on the same day.  I am aware that on motion of a party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one (1) day after the date of deposit for mailing in this affidavit.*

    ___          **BY PERSONAL SERVICE**

     *I hand delivered such envelope to the offices of the addressee(s) listed above.*

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed _____ at _____ , California.

                                 _____